*702 OPINION OF THE COURT
David F. Jung, J.
Petitioner father seeks a custodial change of the two infant issue of the parties to himself, and respondent mother petitions to hold the father in contempt for failing to return one of the children after a scheduled visitation, and to modify the father’s visitation rights.
Trial took place on June 8 and June 9, 1994.
Subsequent to the close of proof and by agreement of all parties, an in camera interview was held with the children, and thereafter the Law Guardian rendered his report.
FINDINGS OF FACT
The parents were married on December 27, 1981 and divorced in 1991. Pursuant to the terms of a separation agreement in 1988, as modified by a stipulation incorporated in and made to survive a judgment of divorce in 1991, custody was granted to the parties jointly and primary physical custody placed with the mother.
Much has happened in the lives of the parties and their children since the agreements and judgment of divorce.
Although all parties originally lived in Johnstown, New York, the mother now resides in the Town of Mayfield, Fulton County, and the father in Warnerville, Schoharie County.
The father was born May 1, 1960, is a high school graduate, and is in good health. He is employed by the State of New York as a State Police officer, earning approximately $41,000 per year. He has assets with his wife of $148,000 and liabilities of approximately $98,000. Although he, his wife, and the infant issue of this proceeding have been raised in the Catholic faith, he attends services only two to three times per year. He socializes by inviting friends for dinner and enjoys hunting as a hobby. He married his wife, Julie, on May 22, 1993, and has had no children as a result of that marriage. Julie Lizzio has never had children, and the only children of petitioner’s are the infant issues involved in this proceeding. Neither the father nor his wife, Julie, smokes tobacco.
Petitioner owns his home wherein each child is afforded a separate bedroom. Precautions have been taken by the father to reduce allergens in his home by treating the carpeted areas with prescribed chemicals and eliminating the use of a kerosene-burning heater which caused an allergic reaction to Samuel Lizzio.
*703 The mother, Deborah Jackson, was born June 30, 1960, is a high school graduate and in good health. She is not presently employed, has assets of approximately $80,000, and liabilities in the neighborhood of $60,000. She and her husband own their own home and therein each child has a bedroom. Due to the construction of her home, access to the girl’s room is gained through the boy’s room, and his room has no door in the doorway existing between the bedroom and stairwell connecting the first and second floors of the home. The bedrooms are on the second floor, and the general living area is on the first floor.
Subsequent to the separation of the parties, the mother lived with two men before meeting her husband, Donald Jackson, and marrying him. This is the third marriage for the mother and the third marriage for her husband. In addition to the subject children of this proceeding, Mrs. Jackson and her husband have a young daughter.
The mother claims no religious affiliation and socializes by having friends visit her home, playing cards, participating in outdoor sports, fishing and camping.
Although the mother is unemployed, she receives child support payments from the father in the sum of $365 biweekly. All support payments are current.
The children affected by this proceeding are Samuel Lizzio, born September 17, 1982, and Patricia Lizzio, born May 30, 1984.
Both children are doing well academically, receiving A’s and B’s on their report cards.
Although Patricia is in good health, Samuel suffers from asthma and perennial allergic rhinitis. He has a history of pulmonary disorders commencing in 1986 and continuing to the date of this trial. He has been treated by many physicians and allergy specialists. From time to time has been hospitalized due to severe asthmatic attacks.
Of great significance is the long-standing medical advice that the parents must maintain environmental control of allergens, including tobacco smoke, to which Samuel has a significant positive reaction. As recently as January 4, 1994, Barbara Dennison, M.D., a pediatrician, stated that there was imminent risk to the health of Samuel if he was exposed to cigarette smoke; that cigarette smoke was a "trigger” to asthmatic attacks, and if said attacks were not treated *704 promptly and appropriately, they could lead to the death of Samuel.
Apparently, when the parties resided together, they both smoked cigarettes in the residence shared with the children. Subsequent to the separation of the parties, their divorce and remarriage, the father has stopped smoking altogether, and his wife, Julie, terminated her habit in the fall of 1993. No smoking is permitted in the Lizzio household.
Unfortunately for the health of Mr. and Mrs. Jackson, they continue to smoke, although when in their residence, they confine it to an enclosed, heated porch on the first floor of the house that is connected to the kitchen with a self-closing door. It is not unusual in the Jackson household for the family to watch television together in the living room and for Mr. and Mrs. Jackson to smoke cigarettes on the porch during commercial breaks. This activity occurs at least two to three hours per day with cigarettes being smoked at each commercial break. It is evident that smoke is coming back into the home from the porch when the door is closed and opened and that same is finding its way into all areas of the home including Samuel’s bedroom, which is not protected by a door.
Although the mother acknowledges that smoking may be hazardous to her health, she has not taken seriously the warnings of professionals that "secondhand smoke” is very dangerous to herself and particularly, Samuel. She minimizes the effect that "passive smoking” has on her son, and when a doctor reminds her of the seriousness of the matter, her recourse has been to seek another doctor’s opinion.
The court takes judicial notice of the hazards to health caused by cigarette smoke, both actively and passively.
THE LAW
The standard to be applied in all disputes between parents involving custody is the best interest of the child. (Matter of Eschach v Eschach, 56 NY2d 167; Friederwitzer v Friederwitzer, 55 NY2d 89.)
In a modification proceeding, it would be improper for this court to base its decision upon a standard requiring a significant change in circumstances since the entry of the earlier order. Instead, the court must consider the totality of the circumstances with the best interests of each child being the critical factor. (Matter of Morton v Morton, 158 AD2d 458.)
Where the first custody award is the result of a stipulation, *705 it is entitled to less weight in a modification proceeding than a disposition after a plenary trial. (Matter of Carl J. B. v Dorothy T., 186 AD2d 736.)
Guided by the above cases, it is clear that there are no absolutes in making custody decisions, and each case must be decided on its own particular facts.
DECISION AND ORDER
In applying the law to the facts of the case before it, the court has considered all testimony and exhibits adduced at the trial together with the in camera interview of the children and the recommendation of the Law Guardian.
While the Law Guardian finds that the mother and stepfather’s smoking habits are injurious to the children and that, to date, she has not recognized the serious threat that smoking poses to her son, he stops short of recommending a custodial change and hopes that the mother will come to her senses and will stop jeopardizing her child’s life.
The court is not as optimistic as the Law Guardian or can it permit a child to be exposed to imminent danger upon the supposition that a mother who has ignored medical advice for many years will now see the light and do the right thing to protect her children.
We are at a point in time when, in the opinion of this Judge, a parent or guardian could be prosecuted successfully for neglecting his or her child as a result of subjecting the infant to an atmosphere contaminated with health-destructive tobacco smoke.
The pivotal issue in this case is cigarette smoke. But for that issue and the health risk that smoking poses, the court would continue the custody arrangement as the parties agreed some years ago.
Because the father has taken steps to protect his children’s health, and because he and his wife have modified their own life-style to eliminate smoking from it, primary and physical custody of Samuel Lizzio and Patricia Lizzio shall be with the father. Joint custody is to continue as in most other respects the parties share the same goals for the children and have worked in concert to accomplish them.
The mother shall have the same custodial time with the children as was previously afforded to the father.
No tobacco smoking is permitted in either household, and *706 Samuel’s allergist’s instructions are to be adhered to by each parent. Therefore, for example, if the allergist dictates that there be no animals in the household, then all animals must be removed from each household.
The Law Guardian’s assignment to this case is continued for a period of six months from the date of this decision and order. The Law Guardian is directed to visit each household and determine whether doctor’s recommendations are being adhered to. The Law Guardian shall receive updated medical reports and shall consult with physicians treating the children to ascertain what recommendations have been made to protect them and which have or have not been adhered to by the parents. Of course, the Law Guardian shall consult with the children as well in order to determine whether their best interests are being protected. The Law Guardian shall report to the court, in writing, within three months, at the end of six months and at such other and further times as he may deem it appropriate to do so.
The petitions of the mother are dismissed.