[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a motion to modify the outstanding court order concerning custody of the parties' two minor children, which order was entered at the time of the parties' divorce on February 26, 1990. At that time the children, Michelle and Daniel, were eight and two respectively, and the defendant, their mother, was ordered to have physical custody, with the plaintiff to have reasonable and liberal visitation. The parties have had joint legal custody since that time.
The children lived in Florida with their mother, now Mrs. Dumond, from early 1990 until June 1994, when they came to Connecticut for their regular summer visitation with the plaintiff, Mr. Gilbert. At the end of the summer, the parties agreed that the children should remain in residence with him for the 1994-95 school year. There is some dispute between the parties as to the reasons for that decision. While they agree that it was motivated by concerns their daughter and they had about the school she was to attend in Florida, Mr. Gilbert testified that Mrs. Dumond told him of problems she was experiencing with her present husband and with Michelle which also supported the children's remaining in Connecticut. The children, as a result of this decision, have lived in Connecticut continuously since June 1994. In April 1995 Mrs. Dumond took up residence in Connecticut as well, living with her mother in Oakville, while the children have lived with Mr. Gilbert in Watertown.
Mr. Gilbert filed this motion to modify custody on April 12, 1995. The court (Dranginis, J.) ordered on July 24, 1995 that an CT Page 5707 evaluation be done by the Family Services Office and, after that evaluation was completed, the matter was tried to this court on March 21, 1996. When evidence could not be completed on that date, the matter was continued to July 17 and 23, 1996. Judge Dranginis had also appointed an attorney to represent the minor children; he participated actively in the trial of this matter. With the permission of the parties and at the suggestion of her attorney, Michelle was interviewed in chambers with all counsel present and in the absence of the parties. Daniel, through his attorney, declined the opportunity for an interview, and his position in this matter was ably presented by his attorney.
After a final decree of dissolution the Supreme Court has limited the broad discretion given trial courts to modify custody orders under § 46b-56 of the General Statutes by requiring that modification of a custody order be based on a material change of circumstances which alters the court's finding of the best interests of the child or a finding that the custody order sought to be modified was not based upon the best interests of the child. Hall v. Hall, 186 Conn. 118, 122 (1982). The order awarding custody of Michelle and Daniel to Mrs. Dumond was entered by agreement of the parties, and the court has no reason to believe that it was not based upon the best interests of the children at that time. Therefore, in order to grant Mr. Gilbert's motion, the court must be satisfied that there has occurred a material change of circumstances which alters what is in the best interests of the children or either one of them. The burden of proof of such a material change is, as usual, on the proponent of the motion, and he must establish that change and its effect on a determination of the children's best interest by a preponderance of the evidence. Cookson v. Cookson, 201 Conn. 229, 240 (1986).
The older of the parties' two children, Michelle, is now almost 15. Daniel is almost nine. They have lived with their father, Mr. Gilbert, in Watertown since June 1994 and presently reside in a three-bedroom ranch house there. The house is an appropriate and comfortable residence for the children. Both through counsel and in her testimony before this court in chambers, Michelle has made it clear that her strong preference is to remain in Connecticut living with Mr. Gilbert. She has come to that conclusion rather recently in the course of this litigation, and her preference is unequivocal. On the other hand, Daniel has never wavered in his expression of a strong preference to live with his mother in Florida. CT Page 5708
Daniel has had serious health problems since he was a very small child. Most significant for the court's decision is his chronic and serious asthma. Daniel has been on medication since he was eight months old and has required various therapists, allergy specialists and pediatric pulmonologists. He currently takes several medications daily to control his condition and on one occasion, while living with Mrs. Dumond in Florida, he was hospitalized for three weeks due to a serious attack. Two of those weeks were spent in intensive care. The parties have differed over the years concerning Daniel's course of treatment, and the evidence indicates that, presently, they are generally in agreement on that subject. Mr. Gilbert's testimony demonstrated that he has a firm understanding of the medical treatment required by Daniel and a willingness to do what is necessary to comply with his medical regimen.
Michelle is an excellent student and has been doing well in her schools in Connecticut. While Daniel has had some difficulty in school during the past year, especially while Mrs. Dumond was absent in Florida, his performance showed a marked improvement in the latter half of the year, after she had returned.
Mrs. Dumond is 38 years of age. Her current residence is also appropriate and comfortable for the children. After her divorce from Mr. Gilbert, she married her current husband, Allen Dumond, on August 17, 1990. Mr. Dumond resides in Tampa, Florida, where Mrs. Dumond and the children had lived until the children came to Connecticut in June 1994. Mrs. Dumond is not employed and considers herself a full-time homemaker. While living here in Connecticut she has returned to her home in Tampa for approximately one month in the summer of 1995 and for the 1995 Thanksgiving and Christmas holidays. Mrs. Dumond indicated to the family services officer and testified that, if she is not successful in obtaining custody of her children, her intention is to remain in Connecticut. During this period of time Mr. Dumond has not visited Mrs. Dumond or the children in Connecticut and has not attempted to involve himself in this litigation or in the family services study.
Mr. Gilbert is also 38 years old and is employed at the U.S. Postal Service in Waterbury, where he has been employed as a postman since 1983. The children and he presently live in a three-bedroom ranch house which he rents from his father. He is in the process of obtaining a mortgage on the home. He is engaged to be married, and his fiancee testified that she spends CT Page 5709 considerable time with the children although she resides with her parents in Naugatuck.
The principal witnesses at the trial of this matter were the parties and the family services officer who conducted the evaluation and recommended that both children remain in Connecticut with Mr. Gilbert. From their testimony it was clear to the court that Mrs. Dumond was the children's principal caretaker from the time of their birth until they came to live with Mr. Gilbert in June 1994. Both parents were described by the family services officer as very involved with their children. Likewise, both children expressed a very strong attachment to each of their parents. They have close relationships with their extended family members, most of whom live in Connecticut.
Mrs. Dumond has seemed distraught at the prospect of the children not returning to Florida with her and considers the care of her children her full-time job. Mrs. Dumond was extremely involved with the children's school activities in Florida when they were younger. There was some indication in the report of the family services officer that Mrs. Dumond may be having difficulty disengaging from that level of involvement in her children's lives as they grow older. Both parents love their children dearly and are able and willing to be good caretakers of them. There is one exception to this observation, however. Despite the fact that Daniel has been a severe asthmatic since he was an infant, Mrs. Dumond and her present husband have both continued to smoke throughout that period and are presently smokers. Mr. Gilbert does not smoke, nor does he permit smoking in his house or car. Mrs. Dumond testified that she does not smoke in Daniel's presence nor in her car.
Every parent has a fundamental right to the "companionship, care, custody and management of his or her children". Stanley v.Illinois, 405 U.S. 645, 651 (1972). This court recognizes that there exists a "private realm of family life which the state cannot enter," Prince v. Massachusetts, 321 U.S. 158, 166 (1944), but family or parental autonomy is not absolute, and may be limited where "it appears parental decisions will jeopardize the health or safety of [a] child." Wisconsin v. Yoder, 406 U.S. 205,234 (1972). See, e.g., Custody of a Minor, 379 N.E.2d 1053,1062, 1065-66 (Mass. 1978).
Section 46b-56 of the General Statutes does not define the term "best interests of the child". It is clear that the court CT Page 5710 must consider all aspects of the children's physical and mental well-being. "To avoid arbitrary decisions with respect to a child's essential needs, the `best interests' standard uses the child's physical and psychological well-being as its cornerstone." V. Wendling, "Smoking and Parenting: Can They Be Adjudged Mutually Exclusive Activities?", 42 Case Western Reserve Law Review, 1025, 1059 (1992). The court may not focus on a single factor to the exclusion of all others. "In the search for an appropriate custodial placement, the primary focus of the court is the best interests of the child, the child's interest in sustained growth, development, well-being, and in the continuity and stability of its environment." Cappetta v. Capetta, 196 Conn. 10,16 (1985). See Goldstein et al., Beyond the Best Interests of the Child, pp. 4-5 (1979). When most of the other factors that would affect a custody determination between two parents are comparable, and one factor clearly relates to the physical health of one of the children, this court believes that it may base its determination as to the proper custodial parent for that child primarily on that factor. See W. Uhlich, infra, p. 753.
The same statute requires the court to take into consideration the "wishes" of the children involved when they are of a "sufficient age" to express an "intelligent preference".
The court finds that a material change of circumstances has occurred since the court's order of 1990 placing physical custody of Michelle and Daniel in Mrs. Dumond in that Mrs. Dumond has voluntarily turned over the children's physical custody to Mr. Gilbert, albeit for a limited period and purpose. See Stewart v.Stewart, 177 Conn. 401, 408 (1979). In addition, the children have now lived in Connecticut continuously for more than two years, Daniel's health has seemed to undergo a noticeable improvement, and Michelle has grown to be a young teenager with quite specific ideas as to where she wishes to reside and why.
Regarding Michelle, she expresses a clear preference to reside here in Connecticut with Mr. Gilbert. She has expressed that preference for the past year or more. Her principal reasons are that she feels a great deal of respect by Mr. Gilbert for her interests in privacy and autonomy. More concretely, she has her own room in Mr. Gilbert's house whereas Mrs. Dumond has made promises that her home in Florida would be expanded to provide Michelle with a private room but has not followed through on those promises. Mrs. Dumond, herself, has testified to a growing distance between her and Michelle. This court concludes that CT Page 5711 Michelle's clearly-stated preference should be honored, there being no conflict between that preference and her best interests.
Regarding Daniel, he has stated his preference at least as clearly as Michelle, and that preference is to reside with his mother and stepfather in Florida. Clearly, Daniel has a very close relationship with his mother. The best evidence of his dependence upon her is the decline in his school performance during a period when she returned to Florida for a few months over the Thanksgiving and Christmas holidays in 1995. This court recognizes that Mrs. Dumond's smoking and that of Daniel's stepfather may not impair their functioning as parents, nor has it deterred the formation of a nurturing and desirable bond between Mrs. Dumond and Daniel. On the other hand, this court believes that his physical health is seriously jeopardized by Mrs. Dumond's and her husband's continued smoking.
The issue of "second-hand smoke" has been a subject of controversy for several years now. This court received no evidence on the general effects of "second-hand smoke", and it takes no position in that debate. There have been, however, several cases in other jurisdictions relating a parent's smoking to the courts' decisions concerning the custody and visitation of an asthmatic child.[1] See, e.g., Bacon v. Goff, 20 Family L. Rep. 1012 (Richland County, S.C., 1993); Unger v. Unger, 20 Family L. Rep. 1463 (Burlington Cty, N.J., 1994); Lizzio v.Lizzio, 162 Misc.2d 701 (Fulton County, N.Y., 1994). Cf. cases collected at nn. 110-16 in W. Uhlich, "Best Interests of the Child: Considering the Effects of Passive Smoking When Making a Custody Adjudication", 68 N. Dak. L. Rev. 727, 745-47 (1992).
The reported medical evidence seems clear on the serious deleterious effects of smoking on an asthmatic child. Id., 736-44. For example, "[t]he presence of one or more smokers in an asthmatic child's household resulted in 63% more emergency room visits than visits of asthmatic children from nonsmoking households". Id., 743, n. 94.
Neither party introduced medical evidence on the question of the current stage of Daniel's asthma or the effects on his current condition of continued smoking by Mrs. Dumond and her husband. During the period of time that Daniel has been living with Mr. Gilbert his asthma has improved. What is not clear is whether this is a result of the environmental factors in Mr. Gilbert's household or Daniel's getting older. CT Page 5712
The court did receive in evidence, without objection, certain records from the three-week hospitalization Daniel experienced in Florida in April 1993. In the discharge summary the physician stated, inter alia, "There should be no smoking in the home". In a follow-up consultation on April 16, 1993 the physician noted that "both parents smoke in the home and in the car", and, "the youngster's asthma seems to have worsened over the three years that they have been in Florida". He concluded, "I discussed with his mother the asthma management at length. There is obviously to be no further smoking in the home." While the statement that Daniel's condition had worsened in Florida is hearsay evidence and must be treated by the court with caution, at the very least these reports demonstrate that Mrs. Dumond was on notice over three years ago of the damaging effects of her and her husband's smoking on Daniel. The evidence is that Mr. Dumond's smoking continues unabated, and that Mrs. Dumond's only concrete effort in the succeeding three years to stop smoking was for a period of six weeks in August 1995 when she wore "the patch". She testified and informed the family services officer during the evaluation that she smokes only on occasion at the present time but more so when she is under stress.
Regarding Mr. Dumond, the evidence is that he continues to smoke in the home and in the car. The family services officer testified that Daniel had reported trouble breathing in his stepfather's house and car in Florida. Further, he reported that Michelle had quoted Mr. Dumond as stating that he was not going to give up his smoking for Daniel's benefit. Mrs. Dumond testified that she would see to it, if Daniel remained in her custody, that Mr. Dumond ceased his smoking. The court does not question Mrs. Dumond's good intentions. The court notes, however, Mr. and Mrs. Dumond's virtual separation since April of 1995 and his failure to take any part in this litigation and questions how effective Mrs. Dumond's exhortations will be on him.
Whether or not Daniel is of "sufficient age" that his preference must be considered by the court, this court has respectfully considered that preference since it has been stated without exception since this litigation was begun and since Daniel's closeness to his mother is not questioned. The Supreme Court has indicated, however, in Knock v. Knock, 224 Conn. 776,788-89 (1993), that a court may disregard the wishes of a child (in that case one six years old) as long as it has considered them. In view of all the circumstances, the court regretfully CT Page 5713 concludes that it cannot give effect to Daniel's preference in view of the serious and continuous hazard to his physical health while his mother and stepfather continue to smoke.[2]
This court acknowledges and respects both parties' determination to play as large a role as possible in their children's upbringing. There is probably no stronger human desire. This court notes, however, instances of behavior on the part of both parties which have clearly not been in the best interests of their children. In 1995, when Mrs. Dumond relocated to Connecticut after this motion was filed, Mr. Gilbert attempted to secrete the children from her and to interfere with her visitation. More recently, there have been continuing difficulties between the parties over the issue of Mrs. Dumond's expanded contact with the children. At the same time, the court is aware of at least one incident, as late as last month, in which Mrs. Dumond precipitated a physical confrontation involving herself, Mr. Gilbert and the children at their home. During this incident she engaged in behavior which required the police to be summoned and made accusations concerning the relationship between her daughter and Mr. Gilbert that are extremely hurtful to Michelle and are totally unsubstantiated by any evidence presented to this court.
The parties must realize that these actions are antithetical to their children's best interests. More concretely, they persuade the court that the current order of joint legal custody cannot stand in view of the parties' continuing acrimonious relationship.
In view of the foregoing, the court enters the following orders:
1. The plaintiff's motion for modification of custody (#108) is granted. Sole legal and physical custody of the two minor children shall be in the plaintiff.
2. Prior to making any major decisions concerning either of the children's health, education or welfare, the plaintiff shall consult with the defendant and shall take into consideration her views on those matters. To the degree possible, the parties should reach agreement on such decisions. Failing agreement, however, the plaintiff shall be the final decisionmaker. The plaintiff shall make certain that the defendant has full access to both children's educational and medical records. CT Page 5714
3. The plaintiff shall see to it that the minor child, Michelle, is not placed in a position where she is a substitute custodian for him due to his employment or other activities.
4. The plaintiff's obligation to pay child support is terminated, effectively immediately, except as to any payments that remain due on the arrearages found in the court's order of May 2, 1995.
5. The defendant shall have visitation with Daniel as at present, which the court understands to be every Monday and Wednesday after school from 3:30 p. m. to 8:00 p. m. and every weekend from Friday after school overnight to Sunday at 10:00 a.m. Regarding Michelle, the defendant shall have visitation every Monday, Wednesday, and Friday after school from 3:30 p. m. to 8:00 p. m. and every other weekend from Friday after school overnight to Sunday at 10:00 a.m.
6. The parties are referred to the family services office for mediation on the issue of additional visitation for Mrs. Dumond, particularly with regard to vacations and holidays. Should Mrs. Dumond decide to return to Florida, the parties are to mediate through the family services office an alternate schedule of visitation.
7. The defendant shall not smoke nor shall she permit smoking by anyone in the presence of Daniel. She shall not smoke nor shall she permit smoking in any residence or motor vehicle to be occupied by him.
8. As suggested by the family services evaluation, the defendant shall involve herself in counseling to address her relationship with the plaintiff in parenting her children and her continuing relationship with her children in light of their changing developmental needs.
9. These orders shall be effective immediately.
SHORTALL, J.